IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF NEBRASKA

| | |
|---|---|
| UNITED STATES OF AMERICA,<br><br>                Plaintiff,<br><br>   vs.<br><br>JUAN AVALOS,<br><br>                Defendant. | CASE NO. 8:13CR88<br><br>MEMORANDUM AND ORDER |

This matter is before the Court on the Findings and Recommendation (Filing No. 27) issued by Magistrate Judge Thomas D. Thalken recommending that the Amended Motion to Suppress (Filing No. 17) filed by the Defendant Juan Avalos ("Defendant" or "Avalos"), be denied. Defendant filed an objection to the Findings and Recommendation (Filing Nos. 28) as allowed by 28 U.S.C. § 636(b)(1)(C) and NECrimR 59.2(a). For the reasons discussed below, the Findings and Recommendation will be adopted, and the Amended Motion to Suppress will be denied.

## BACKGROUND

Defendant was charged in a three-count Indictment (Filing No. 1) with possession with intent to distribute 50 grams or more of methamphetamine (Count I), felon in possession of a firearm (Count II), and possession of a stolen firearm (Count III). Defendant seeks suppression of evidence as a result of a search conducted at 2114 S. 45th Street, Omaha, Nebraska (the "Apartment"), on or about February 1, 2013. Specifically, Defendant claims that the evidence was seized during a protective sweep of the Apartment subsequent to Defendant's arrest, in violation of the Fourth Amendment of the United States Constitution.

Judge Thalken provided a written account of the events surrounding the search and seizure.  (Filing No. 27 at 1-4.)  The Court has considered the transcripts of the hearings conducted by Judge Thalken and carefully viewed the evidence.  There are no objections to Judge Thalken's factual findings, and based on a de novo review of the record the Court adopts those factual findings.

By way of summary, Task Force Officers Jeffery Shada ("Officer Shada") of the Omaha Police Department and Travis Jarzynka ("Officer Jarzynka") of the Council Bluffs Police Department had a Pottawattamie County, Iowa, warrant for Defendant's arrest listing escape as the reason for the warrant.  The officers received a tip that Defendant was living at the Apartment, that belonged to Defendant's brother.  Officers were advised that Defendant had a handgun and would flee if given the chance.  Officers conducted a traffic stop of an individual believed to be Defendant, but who was revealed to be his brother.  Defendant's brother confirmed that Defendant was living at the Apartment, and gave the officers a key to enter the apartment without restriction.

Officers proceeded to the Apartment and knocked and announced their presence, but received no response.  Officers used the key to unlock the apartment.  As the officers stood at the door, they again announced their presence and Defendant emerged into a hallway.  No other individuals were visible in the Apartment.  The officers did not enter, but directed the Defendant to the outside hallway, where he was arrested pursuant to the Pottawattamie County warrant.

At the time of his arrest, Defendant wore a light weight t-shirt, blue jeans, and socks with no shoes.  The weather outside was approximately five degrees with a wind chill below zero.  The officers asked Defendant where they could find clothing and

2

shoes for him, and he directed them to one of the bedrooms. A team of officers then entered the Apartment to make sure no other people were present. Officers Shada and Jarzynka then entered the bedroom to retrieve clothing. In plain view, the officers observed a handgun on the floor and a small plastic bag containing suspected methamphetamine. Due to the large amount of clothing present, the officers asked Defendant for a specific description of the desired clothing. The officers retrieved the requested clothing, and seized the gun and suspected methamphetamine.

Following an evidentiary hearing, Judge Thalken issued written Findings and Recommendation. Judge Thalken concluded that the evidence was constitutionally seized from the Apartment. Specifically, Judge Thalken noted that the arresting officers were responsible for Defendant's safety and had a duty to ensure he was appropriately clothed before taking him outside on a cold and windy day. Thus, the officers were constitutionally permitted to enter the Apartment to find clothing for Defendant. Judge Thalken also noted that at the time officers entered to obtain clothing, no officers had yet entered the Apartment. Judge Thalken reasoned that the officers were not required to believe Defendant's statement that there were no other people in the apartment, and reasonably conducted a protective sweep. Judge Thalken therefore recommended that the Motion to Suppress be denied.

## STANDARD OF REVIEW

"Under 28 U.S.C. § 636(b)(1)(C), when a magistrate judge issues proposed findings and recommendation on a motion to suppress evidence in a criminal case, the Court must make a de novo determination of those portions of the findings and recommendation to which the Defendant has objected. The Court may accept, reject, or

modify, in whole or in part, the findings and recommendation. The Court may also receive further evidence or remand the matter to the Magistrate Judge with instructions." *U.S. v. Schuck*, No. 8:12CR107, 2012 WL 5930195 at *3 (D. Neb. Nov. 26, 2012), NECrimR 59.2.

## DISCUSSION

The Defendant contends that the search by law enforcement of the Apartment without a warrant was not justified, arguing that the clothing exception does not apply in this case, and no other exception permitted a warrantless entry. For the reasons discussed below, the Court concludes that the search of the Apartment did not violate the Fourth Amendment.

"'[The Supreme] Court has emphasized that the mandate of the (Fourth) Amendment requires adherence to judicial processes, and that searches conducted outside the judicial process, without prior approval by judge or magistrate, are per se unreasonable under the Fourth Amendment -subject only to a few specifically established and well-delineated exceptions." *Katz v. U.S.*, 389 U.S. 347, 357 (1967) (internal quotations omitted). "The Fourth Amendment permits a properly limited protective sweep in conjunction with an in-home arrest when the searching officer possesses a reasonable belief based on specific and articulable facts that the area to be swept harbors an individual posing a danger to those on the arrest scene." *United States v. Green,* 560 F.3d 853, 856 (8th Cir.2009) (quoting *Maryland v. Buie,* 494 U.S. 325, 337 (1990)) (internal quotation marks omitted). "To be 'properly limited,' a protective sweep must be 'a quick and limited search of premises ... conducted to protect the safety of police officers or others [and] narrowly confined to a cursory visual

4

inspection of those places in which a person might be hiding."' *Id.* (alteration in original) (quoting *Buie,* 494 U.S. at 327). "[A]n officer arresting a suspected drug trafficker in one room of a multi-room residence is justified in conducting a *Buie* sweep out of concern that there could be individuals lurking in the other rooms who may resort to violence to thwart the arrest." *Id.* (alteration in original) (quoting *United States v. Cash,* 378 F.3d 745, 749 (8th Cir.2004)) (internal quotation marks omitted).

Defendant argues that the protective sweep did not justify the search because the arrest happened outside the Apartment. "Ordinarily, the arrest of a person outside of a residence does not justify a warrantless search of the residence itself." *U.S. v. DeBuse*, 289 F.3d 1072, 1074 (8th Cir. 2002) (*citing Chimel v. California*, 395 U.S. 752, 763 (1969)). The Eighth Circuit has identified an exception to this rule where an officer accompanies an arrestee into his or her residence to obtain identification or clothing. *Id.* (citing *Washington v. Chrisman*, 455 U.S. 1, 7 (1982); *United States v. Apker*, 705 F.2d 293, 306 (8th Cir.1983)). Without the arrestee's request, the arrestee's "partially clothed status may constitute exigency justifying officer's temporary reentry into arrestee's home to retrieve clothes." *Id.* (citing *United States v. Gwinn*, 219 F.3d 326, 333 (4th Cir.2000)). This exception has been called the "clothing exception" and has been described as a "variant or subcategory of the exigent circumstances exception to the warrant requirement under which courts permit the police to make a warrantless entry into a private dwelling to respond to a dangerous or emergency situation." *U.S. v. Jackson*, 414 F.Supp.2d 495, 504 (D. N.J. 2006).

A majority of Circuit Courts of Appeal have entered opinions either expressly adopting the clothing exception or recognizing that an arrestee's partially clothed status

justifies a warrantless entry to retrieve clothing.[1]  In his lengthy argument, Defendant claims that the clothing exception radically departs from established Fourth Amendment precedent, and should be rejected outright.  Defendant also argues that the Eighth Circuit's decision in *DeBuse*, invokes a line of cases creating an "at the elbow" rule rather than being a true "clothing exception" case.  Defendant claims that the so-called "at the elbow" rule required the officers to enter the home with the Defendant.  Regardless of what the rule is called, the decision in *DeBuse* states that the arrestee's "partially clothed status may constitute exigency justifying officer's temporary reentry into arrestee's home to retrieve clothes."  *DeBuse*, 289 F.3d at 1074.  The court clarified that even without "an affirmative indication that the arrestee might have a weapon available or might attempt to escape, the arresting officer has authority to maintain custody over the arrestee and to 'remain literally at [the arrestee's] elbow at all times.'" *Id.* (citing *Chrisman*, 455 U.S. at 6).  There is no indication that officers were required to

---

[1] *See e.g. U.S. v. Gwinn*, 219 F.3d 326 (4th Cir. 2000) (affirming district court's denial of motion to suppress a gun found when officer re-entered defendant's trailer on own initiative to obtain boots and shirt for the defendant, who was handcuffed and in the police cruiser); *U.S. v. Clay*, 408 F.3d 214 (5th Cir. 2005) (affirming district court's denial of motion to suppress when defendant was arrested in his room, police discovered defendant was barefoot and on own initiative went back to bedroom to get shoes and discovered bag of marijuana in plain view).  Other circuits have recognized the exception though not expressly.  *See U.S. v. Nascimento*, 491 F.3d 25 (1st Cir. 2007) (stating arrest of a partially clothed individual's need to be dressed may constitute an exigency justifying entering to obtain clothing); *DeBuse*, 289 F.3d 1072 (8th Cir. 2002) (above); *U.S. v. Butler*, 980 F.2d 619 (10th Cir. 1992) (upholding police officer's warrantless entry inot oan arrestees' trailer to retrieve shoes because of presence of glass, "several hundred beer cans," and auto parts strewn on ground, and departing from Circuit's more general rule prohibiting warrantless entry into a private dwelling "solely upon the desire of law enforcement officers to complete [an] arrestee's wardrobe."); *U.S. v. DiStefano*, 555 F.2d 1094 (2nd Cir. 1977) (upholding police officer's seizure of incriminating evidence under plain view doctrine after officer accompanied arrestee to her room so she could dress, and holding police had a duty to find clothing for arrestee in their custody or permit the arrestee to do so), *U.S. v. Apker*, 705 F.2d 293, 306 (8th Cir. 1983) (contraband discovered as officer escorted defendant to get his clothes).

The Sixth and Ninth Circuits rejected the clothing exception in certain circumstances.  *See U.S. v. Whitten,* 706 F.2d 1000,1016 (9th Cir 1983), *overruled on other grounds* (drugs found in hotel room after defendant was arrested outside then taken back into room and after defendant's request to dress were seized illegally); *U.S. v. Kinney*, 638 F.2d 941, 945 (6th Cir. 1981) (defendant did not request clothing or consent to an entry of his home, therefore, entry was not justified);

6

remain with the arrestee as a protection of the arrestee's rights. This "at the elbow" language permitted law enforcement officers to remain with the arrestee to protect the officers or prevent the arrestee from fleeing. *See id.* at 1074-75 (stating that "[a]llowing reentry on the condition that the officers accompany him was reasonable.").

The Court agrees with the majority of the Circuit Courts, including the Eighth Circuit, that an officer may enter an arrestee's residence, or a specific room of that residence, in order to locate clothing for an arrestee, where such clothing is required for the defendant's health or safety. The Court further agrees that any evidence that is located while retrieving an arrestee's clothing is admissible under the plain view doctrine. *See id.* at 1075 (stating that because the officers were legally entitled to enter the home, they were legally in a position to see contraband); *see also U.S. v. Radaj*, 390 F.Supp.2d 395, 402 (S.D.N.Y. 2005) (Allowing the admission of evidence discovered in plain view in defendant's bedroom, after entering the bedroom to obtain clothing for the defendant who was wearing only his underwear and a t-shirt.). The Court must therefore determine whether the search of the Apartment was reasonable, on the basis that law enforcement officers were obtaining clothing to provide to the Defendant to protect the Defendant from the cold weather. There is no evidence that the Defendant affirmatively requested clothing, and it appears that the officers acted on their own volition. The question before the Court is whether the need to provide clothing to Defendant constituted an exigent circumstance.

To determine whether the need to provide clothing was an exigent circumstance, the Court must determine whether the clothing was required to protect the Defendant's health and safety. Judge Thalken determined that the Defendant's partially clothed

7

status justified entry into the Apartment to retrieve clothing for him.  It is undisputed that at the time of the arrest, the Defendant was wearing a lightweight t-shirt, blue jeans, and socks with no shoes.  It is also undisputed that the temperature outside the Apartment was five degrees, with a windchill below zero.  The high wind created a tunnel effect in the hallway outside the Apartment.  As Judge Thalken noted, the officers "had a duty to make sure Avalos was appropriately clothed before taking him outside in the inclement weather."  (Filing No. 27 at 6.); *see also United States v. Wilson*, 306 F.3d 231, 241 (5th Cir.2002) ("the potential of a personal safety hazard to the arrestee places a duty on law enforcement officers to obtain appropriate clothing.").  Although the Court recognizes the concern that an officer may use the clothing requirement to conduct a more intrusive search, the Court finds no reason to second guess the intentions of the officers in this case.  The officers were justified to retrieve clothing under the circumstances, and justified in conducting a protective sweep before doing so.  When officers discovered the contraband, they were acting with the desire to provide clothing to the Defendant.  Accordingly, the Court concludes that the search of the Apartment was lawful.

## CONCLUSION

For the reasons stated above, the officers were justified to enter the Apartment for the purpose of obtaining clothing for the Defendant.  The officers were also justified to conduct a limited protective sweep before doing so.  The fact that the Defendant was not dressed for a frigid and windy day at the time of the arrest provided an exigent circumstance sufficient to justify the search of the Apartment and subsequent seizure of evidence.  Accordingly,

IT IS ORDERED:

1.  The Findings and Recommendation (Filing No. 27) issued by Magistrate Judge Thomas D. Thalken are adopted in their entirety;

2.  The Defendant's objection to the Findings and Recommendation (Filing Nos. 28) is overruled; and

3.  The Defendant's Amended Motion to Suppress (Filing No. 17) is denied.

DATED this 31th day of July, 2013.

                BY THE COURT:

                s/Laurie Smith Camp
                Chief United States District Judge